UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Jonathan Reinschmidt, M.D.,

        Plaintiff,

  -vs-

Exigence LLC (Del), Buffalo
Emergency Associates, L.L.P.,
Exigence Medical of Hornell
P.L.L.C., Exigence Medical of
Binghamton P.L.L.C., Austin
Immediate Care, P.L.L.C., Exigence
Medical of New York P.L.L.C.,
Exigence of Fremont L.L.C.,
Exigence New Jersey L.L.C. (N.J.),
Exigence of New Jersey L.L.C.
(N.J.), Exigence New York L.L.C.,
Nyamekye North America L.L.C.,
Exigence Management Company, Inc.,
Exigence Pennsylvania L.L.C.,
Exigence of Bradford P.L.L.C.,
Exigence of Sunbury L.L.C.,
Exigence LP (Pa.), Exigence,
L.L.C. (Pa.), Exigence Healthcare
Solutions of Nevada L.L.C.,
Exigence Hospitalist Services of
Western New York, PLLC, Exigence
Hospitalist Services of Olean,
PLLC, Nyamekye Hospitalist
Services of Erie County, PLLC,
Exigence Health Plan, Inc.,
Lakeway Emergency Management
Services L.L.C., Multistate
Holdings L.L.C. (Del.), Multistate
Holdings Partnership, Western New
York Immediate Medical Care
L.L.C., Pulse Occupational
Medicine, L.L.C., Exigence Arizona
L.L.C., Irving H. Levy, FMB
Holdings L.L.P., Joseph
Divincenzo, Esq. and Gregory F.
Daniel, M.D.,

        Defendants.

**DECISION and ORDER**
**No. 1:14-cv-00997-MAT-HBS**

---

## I.    Introduction

This case is before the Court upon the Report and Recommendation ("R&R") (Dkt #41) issued by United States Magistrate Judge Hugh B. Scott on January 19, 2016. The R&R recommends denying in part and granting in part the Motion to Dismiss (Dkt #21, replacing Dkt #8) by defendants Exigence L.L.C. (Del.); Exigence New Jersey, L.L.C.; Exigence New York, L.L.C.; Nyamekye North America L.L.C.; Exigence Pennsylvania, L.L.C.; Exigence of Sunbury L.L.C.; Exigence Healthcare Solutions of Nevada L.L.C.; Exigence Hospitalist Services of Western New York, PLLC; Exigence Hospitalist Services of Olean, PLLC; Nyamekye Hospitalist Services of Erie County, PLLC; Exigence Health Plan, Inc.; Lakeway Emergency Management Services, L.L.C.; Multistate Holdings L.L.C. (Del.); Multistate Holdings Partnership; Exigence Arizona L.L.C.; Irving H. Levy ("Levy"); FMB Holdings L.L.P.; Joseph DiVincenzo, Esq. ("DiVincenzo"); and Gregory F. Daniel, M.D. ("Daniel") (collectively, "the Connors Defendants").[1] The R&R also recommends denying in part and granting in part the Motion to Dismiss (Dkt #20, replacing Dkt #7) by Buffalo Emergency Associates, L.L.P., Exigence Medical of Hornell P.L.L.C., Exigence Medical of Binghamton P.L.L.C., Austin Immediate Care P.L.L.C., Exigence

---

[1] Because there is overlap between portions of the names of some of the entities represented by two different law firms (e.g., a number of the defendants have "Exigence" in their names), the Court will refer to each group of defendants by reference to the name of the law firm that represents them—Connors LLP ("Connors") or Harris Beach LLP ("Harris Beach").

Medical of New York P.L.L.C., Exigence of Fremont L.L.C., Exigence Management Company, Inc., Exigence of Bradford, P.L.L.C., Western New York Immediate Medical Care, L.L.C., and Pulse Occupational Medicine, P.L.L.C. (collectively, "the Harris Beach Defendants").

## II.  Factual Background and Procedural History

Plaintiff filed his original Complaint (Dkt #1) on November 26, 2014. Both sets of defendants filed Motions to Dismiss (Dkt ##7 & 8) on April 1, 2015. Pursuant to Fed. R. Civ. P. 15(a)(1)(B), Plaintiff filed an Amended Complaint (Dkt #13) on April 22, 2015, asserting seventeen causes of action. The well-pleaded allegations in the Amended Complaint are taken as true for purposes of Fed. R. Civ. P. 12(b)(6) and are summarized briefly below.

After completing his residency at University of Buffalo Medical School, Plaintiff accepted a position of employment with Buffalo Emergency Associates, L.L.P. ("Buffalo Emergency Associates") as an emergency room physician. Plaintiff signed a partnership agreement with Buffalo Emergency Associates on June 11, 2001, becoming a general partner in 2004. Plaintiff subsequently obtained interests in four other entities connected with Buffalo Emergency Associates: Multistate Holdings Partnership ("Multistate"), Western New York Immediate Medical Care, L.L.C. ("WNY Immediate Care"); Exigence Medical of Hornell PLLC ("Exigence Hornell"); and Exigence Medical of Binghamton PLLC ("Exigence Binghamton"). Buffalo Emergency Associates, along with Multistate

and WNY Immediate Care, control the twenty-some-odd remaining defendant entities listed in the caption. Plaintiff refers to these entities collectively as the "Exigence Group." Levy acts as the chief financial officer, and DiVincenzo acts as corporate counsel and compliance officer for Exigence Group. Daniel, in addition to being the chief executive officer of Buffalo Emergency Associates, was purportedly a partner, officer, and architect of the Exigence Group.

Sometime prior to December 2010, Plaintiff began inquiring about withdrawing from the Exigence Group in order to move to Tennessee for reasons not specified in the Amended Complaint. Plaintiff announced his intention of leaving in December 2010, and then began winding down his involvement. As part of this process, he signed an "exit letter" agreeing to sell his interest in Multistate, in April 2011. His last shift working as an emergency room physician for Buffalo Emergency Associates was in July 2011. In August 2011, he signed more "exit letters" agreeing to sell his interests in Buffalo Emergency Associates and WNY Immediate Care. At the end of August of 2011, he had completed his exit and moved to Tennessee. For a total capital contribution to the Exigence Group of $252,000, Plaintiff received approximately $2,253,000 when he withdrew—a nearly ten-fold return on investment.

On May 1, 2012, more than a year after Plaintiff gave notice that he was leaving, Exigence Group was acquired by non-party

TeamHealth, Inc. ("TeamHealth"). According to Plaintiff, this move was very lucrative for physicians who remained a part of the Exigence Group.

On November 25, 2013, Plaintiff commenced his first federal lawsuit, Reinschmidt v. Buffalo Emergency Associates, LLP, et al., No. 1:13-cv-1153-RJA-McCarthy). This case was dismissed on May 19, 2014, because there was incomplete diversity of citizenship, and therefore subject matter jurisdiction was lacking.

Approximately t a year later, on November 26, 2014, Plaintiff then instituted this lawsuit, in which he reprises his assertions, raised in the previous case, that he was not provided with critical information about the TeamHealth acquisition by the Exigence Group's leadership, which he claims was being contemplated months before he inquired about the value of his shares or gave notice of his intention to withdraw. He also asserts that the Exigence Group's leadership finalized their intention to proceed with the acquisition in October of 2011. Plaintiff contends if he had been informed that this acquisition was being negotiated by his partners, he would have retained his interest in Exigence Group, which he believes would have been worth in excess of $4 million at the time of the acquisition.

After Plaintiff filed his Amended Complaint, both sets of defendants renewed their Motions to Dismiss (Dkt ##20 & 21). The Connors Defendants moved to dismiss Counts One and Three (fraud by

omission); Four and Five (conversion); Six (negligent misrepresentation); Seven, Eight, and Nine (breach of fiduciary duty); Ten (breach of contract); Fourteen (unjust enrichment); Fifteen (accounting); and Sixteen (commission of civil RICO violation) and Seventeen (conspiracy to commit civil RICO violation). See Dkt #21. The Harris Beach Defendants moved to dismiss Count Two (fraud by omission); Four and Five; Ten, Eleven, Twelve, and Thirteen (breach of contract); and Fourteen, Sixteen, and Seventeen. See Dkt #20.

The R&R recommended denying the motions with regard to Counts Eleven, Twelve, Thirteen, and Fifteen; denying the motions with respect to Count Ten as to the individual defendants (DiVincenzo, Levy, and Daniel) and Buffalo Emergency Associates, WNY Immediate Care, Pulse Occupational Medicine PLLC ("Pulse Medicine"), Multistate, Exigence Hornell, and Exigence Binghamton; granting the motions as to Count Ten for all other defendants, but dismissing that count without prejudice with leave to replead after discovery; and granting the motions with regard to Counts One, Two, Three, Four, Five, Six, Seven, Eight, Nine, Sixteen, and Seventeen as to all defendants and dismissing those counts with prejudice. In addition, the R&R recommended dismissing Exigence New Jersey, L.L.C. (N.Y.); Exigence, LP (Pa.); and Exigence L.L.C. (Pa.) because, although Plaintiff had named them in the original

Complaint, he did not include them in the Amended Complaint. <u>See</u> Dkt #41 at 55-56.

On February 12, 2016, the Harris Beach Defendants filed Objections (Dkt #46) to the R&R, as did Plaintiff (Dkt #47) and the Connors Defendants (Dkt #48). On February 29, 2016, the Harris Beach Defendants submitted a Reply/Response to Plaintiff's Objections (Dkt #49), Plaintiff filed a Response to the Connors Defendants' Objections (Dkt #50) and a Response to the Harris Beach Defendants' Objections (Dkt #51), and the Connors Defendants submitted a Response to Plaintiff's Objections (Dkt #52). On March 16, 2016, the Harris Beach Defendants filed a Reply in Further Support of Their Objections (Dkt #53), Plaintiff filed a Response to Defendants' Responses to Plaintiff's Objections (Dkt #54), and the Connors Defendants filed a Reply/Response in Further Support of Their Objections (Dkt #55).

Magistrate Judge Scott requested further briefing on the Connors Defendants' argument, asserted in their Objections, that the Court would be divested of subject-matter jurisdiction if it were to accept the R&R. <u>See</u> Dkt #57. The Connors Defendants pointed out that if, as the R&R suggested, Plaintiff did not actually withdraw from Buffalo Emergency Associates, WNY Immediate Care, Pulse Medicine, Multistate, Exigence Hornell, and Exigence Binghamton, those defendants must be deemed citizens of the same

State as Plaintiff as a matter of partnership law, thereby eliminating complete diversity of citizenship.

On June 2, 2016, Plaintiff filed his Reply/Response (Dkt #58) to the request for further briefing on the issue of subject-matter jurisdiction. On June 16, 2016, the Harris Beach Defendants filed a Memorandum of Law in Support of Co-Defendants' Diversity Argument (Dkt #59). The Connors Defendants filed a Supplemental Brief Regarding Subject-Matter Jurisdiction on June 23, 2016 (Dkt #60).

The parties appeared for oral argument before the Hon. Richard J. Arcara, United States District Judge on July 14, 2016. Judge Arcara reserved decision.

On October 24, 2018, the matter was transferred to the undersigned. The Motions to Dismiss were submitted without oral argument on October 25, 2018. For the reasons discussed below, the Court accepts in part and rejects in part the R&R, and it grants both motions to dismiss in their entirety.

**III. Standard of Review**

Recommendations made by a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B) "need not be automatically accepted by the district court." Grassia v. Scully, 892 F.2d 16, 19 (2d Cir. 1989). Should either party object to a magistrate judge's report and recommendation, "[a] judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C.

§ 636(b)(1). The Second Circuit has clarified that "[e]ven if neither party objects to the magistrate's recommendation, the district court is not bound by the recommendation of the magistrate." Grassia, 892 F.2d at 19. Rather, "'[a] judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions.'" Id. (quoting 28 U.S.C. § 636(b)(1); citing Mathews v. Weber, 423 U.S. 261, 271 (1976); McCarthy v. Manson, 714 F.2d 234, 237 n. 2 (2d Cir. 1983)).

## IV. Discussion

### A. Counts One, Two, Three, Four, Five, Six, Seven, Eight, Nine, Fourteen, Sixteen, and Seventeen Should Be Dismissed, as Recommended in the R&R

#### 1. The R&R Correctly Recommended Dismissal of Counts Four and Five

In Counts Four and Five of the Amended Complaint, Plaintiff alleges that Daniel converted his interest in Exigence Hornell and Exigence Binghamton when he ceased working shifts at the medical facilities served by those entities. Dkt #13 at 41-43, ¶¶ 263-78. Plaintiff objects to the R&R's recommendation to dismiss these counts because they "'do not allege any actionable conduct that was collateral to or extraneous of the contractual obligations under the various operating or partnership agreements.'" Plaintiff's Objection (Dkt #47) at 2 (quoting Dkt #41 at 45). The need for alternative pleading, Plaintiff argues, is demonstrated by the

-9-

Harris Beach Defendants' argument they should be released from any breach of contract claims (Counts Eleven, Twelve, and Thirteen) because the defendant entities cannot be in breach of the agreements that created them. Dkt #47 at 2 (citing Dkt #46-1 at 4) (stating that Counts Eleven, Twelve, and Thirteen "in substance complain that Plaintiff's *co-partners and/or co-members* breached the respective partnership and/or membership agreements (which created those entities) by failing to provide him with distributions he was allegedly entitled to thereunder") (italics in original; footnote omitted).

Both sets of defendants argue that the R&R correctly determined that the conversion claims are duplicative of the breach of contract claims. The Court agrees. As the Connors Defendants point out, in alleging that Daniel converted Plaintiff's ownership interest in Exigence Medical of Hornell and Exigence Medical of Binghamton, Plaintiff is simply asserting that Daniel violated his contractual rights under those entities' respective operating agreements. See Dkt #52 at 3. Under New York State Law, it is well settled that "'[a] claim to recover damages for conversion cannot be predicated on a mere breach of contract[.]'" Singapore Tong Teik PTE Ltd. v. Coppola, No. 04-CV-3440 FB RLM, 2007 WL 2375796, at *4 (E.D.N.Y. Aug. 17, 2007) (quoting Priolo Commc'ns, Inc. v. MCI Telecommc'ns Corp., 669 N.Y.S.2d 376, 376 (2d Dep't 1998)); accord, e.g., Nasso v. Bio Reference Labs., Inc., 892 F. Supp.2d 439, 454

(E.D.N.Y. 2012). Because Plaintiff's allegations "merely recast[,]" Singapore Tong Teik PTE Ltd., 2007 WL 2375796, at *4, his breach of contract claims, they "must be dismissed." Id.; see also Nasso, 892 F. Supp.2d at 454 (plaintiff failed to state claim for conversion where he alleged no independent or additional wrong aside from defendant's failure to adhere to the alleged oral agreement concerning the commission).

For related reasons, the Court must reject Plaintiff's assertion that he is entitled to plead conversion claims in the alternative because it rests on the mistaken assumption that he can elect between enforcement of a contractual right under contract or tort law. "It is . . . settled under New York law that a tort claim will not arise 'where[, as here,] plaintiff is essentially seeking enforcement of the bargain.'" In re Chateaugay Corp., 10 F.3d 944, 958 (2d Cir. 1993) (quoting Sommer v. Federal Signal Corp., 79 N.Y.2d 540, 552 (1992)).

In sum, the Court concludes that the R&R correctly recommended dismissal of Counts Four and Five. The Court therefore need not reach the Connors Defendants' and Harris Beach Defendants' objections to the R&R's rejection of alternative arguments these defendants urged for dismissal of Counts Four and Five.

### 2. The R&R Correctly Recommended Dismissal of Counts One, Two, Three, Six, Seven, Eight, Nine, Fourteen, Sixteen, and Seventeen

Plaintiff does not object to the R&R's recommendation that Counts One, Two, and Three (fraud by omission); Six (negligent misrepresentation); Seven, Eight, and Nine (breach of fiduciary duty); Fourteen (unjust enrichment); Sixteen (commission of civil RICO violation); and Seventeen (conspiracy to commit civil RICO violation) be dismissed. The Connors Defendants and the Harris Beach Defendants ask that the Court adopt the R&R's recommendation to dismiss these counts.

The Court has reviewed the R&R's findings and recommendations as to Counts One, Two, Three, Six, Seven, Eight, Nine, Fourteen, Sixteen, and Seventeen. Finding no clear error, the Court accepts the R&R's recommendation that these Counts be dismissed with prejudice.

### B. Count Ten Must Be Dismissed With Prejudice, Contrary to the R&R

Count Ten alleges breach of the Multistate partnership agreement by all named defendants on the basis that they are alter-egos of Multistate. Dkt #13 at 48-50, ¶¶ 316-50. The R&R recommended sustaining Count Ten as against Daniel, Levy, DiVincenzo, Multistate, and the Harris Beach Defendants. The R&R recommended dismissing Count Ten, without prejudice, as to all other defendants, i.e., the entities in which Plaintiff did not own an interest. See Dkt #41 at 47-48. The Connors Defendants and

Harris Beach Defendants have asserted various objections to the R&R's findings as to Count Ten. See, e.g., Dkt #46-1 at 7-13; Dkt #48 at 22-25; Dkt #59 at 2-3; Dkt #60 at 1-3.

The foundation for the R&R's determination regarding Count Ten's viability is that Plaintiff did not effectively withdraw from the Multistate partnership agreement before the TeamHealth acquisition in May of 2102. In the Amended Complaint, Plaintiff alleges that he "withdrew his partnership [in Multistate] before this action was commenced." Dkt #13 at 21, ¶ 126. Plaintiff cites the exit letter to Multistate that he signed on April 12, 2011 (Dkt #13-3 at 1-2) which, by its own terms, was effective as of December 31, 2010. Id. Likewise, in the context of Count Ten, Plaintiff does not allege that his ownership interest in Multistate continued until TeamHealth announced the acquisition of the Exigence Group on May 1, 2012. Instead, he reiterates that his ownership interest in Multistate continued "[u]ntil his withdrawal [o]n December 31, 2010." Dkt #13 at 49, ¶ 317. Indeed, the only two theories of breach pleaded by Plaintiff in Count Ten are that the defendants "made unapproved, secret loans," id. at 49, ¶ 322; and failed to "provide [him] with a third-party valuation, an accounting, of his Partnership Units as of December 31, 2010," id. at 50, ¶ 330. When supplemental briefing was requested as to "what was the last date on which [P]laintiff was an owner," Dkt #39 at 3, Plaintiff again confirmed that he "divested his ownership interests

in [Multistate] and any [of its] subsidiaries on or before April 29, 2011." Id. at 6.

The R&R, however, ignored Plaintiff's express allegations and concluded that "this attempted withdrawal by [P]laintiff . . . was null and void" because Plaintiff does not allege that he followed the correct procedure for transferring his ownership interest set forth in Multistate's partnership agreement, and therefore a valuation of his ownership interest should have reflected any increase in value from the May 2012 acquisition. See Dkt #41 at 45. "While the court must construe the complaint in plaintiff's favor, it cannot rewrite plaintiff['s] pleading or invent factual scenarios for him." Massapinero v. Rikers Island Mental Health Dep't Servs., No. 13-CV-00530 TPG, 2015 WL 1473313, at *3 (S.D.N.Y. Mar. 31, 2015).

Moreover, even assuming Plaintiff failed to follow the proper procedure in transferring his ownership interest back to Multistate, that does not mean that his purposeful withdrawal from the partnership was ineffective. In Cahill v. Haff, 248 N.Y. 377 (1928), the New York Court of Appeals, relying on N.Y. P'ship Law § 62(2), "observed that notwithstanding provisions in a partnership agreement involving the termination of the partnership, any partner may repudiate the agreement at any time, reasoning that '[n]o agreement can prevent this result. No one can be forced to continue as partner against his will. . . .'" Eskenazi v. Schapiro,

27 A.D.3d 312, 315, 812 N.Y.S.2d 474 (1st Dept. 2006) (quoting Cahill, 248 N.Y. at 382). Thus, Plaintiff's failure to follow the proper procedure for selling back his partnership shares to Multistate does not void his withdrawal. See Napoli v. Domnitch, 236 N.Y.S.2d 549, 551–52 (2d Dept. 1962) (plaintiff sent a registered letter to defendants notifying them that he elected to dissolve the partnership as of the close of business on June 30, 1961; defendants' attorney notified plaintiff's attorney that it was defendants' position that the contract was not terminable at will; and that, if plaintiff wished to withdraw, he presumed that plaintiff would follow the procedure specified in the agreements; court held that plaintiff was not liable in damages for breach), aff'd, 14 N.Y.2d 508 (1964).

The Court further notes that Multistate's partnership agreement expressly provided that

> [n]otwithstanding any provision of this Agreement, if a Partner ceases to be a Partner of the Partnership, . . . all his rights under this Agreement, shall terminate effective immediately as of the date he ceases to be a Partner.

Dkt #21-3 at 26, Article VII(G)(4). Thus, Plaintiff's withdrawal immediately terminated his rights thereunder. If he had a right to a valuation of his shares under the Multistate partnership agreement, it was as of the effective date of his withdrawal, either December 31, 2010, the date in his April 12, 2011 exit letter; or April 12, 2011, the date he signed the exit letter. It

-15-

cannot be May 1, 2012, the date of the acquisition, and therefore, the R&R's suggested theory of liability for Count 10 is untenable. The Court finds that the R&R erroneously concluded that the Amended Complaint sufficiently alleges that Plaintiff retained his ownership in Multistate until at least May 1, 2012, and that Count Ten therefore states a plausible breach of contract claim. The Court therefore rejects the recommendation to allow Count Ten to proceed.

Instead, the Court elects to dismiss Count Ten based on the failure of the Amended Complaint to plausibly allege the essential elements of a breach of contract claim. A plaintiff seeking to prevail on a breach of contract claim under New York law must establish "'(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages.'" First Investors Corp. v. Liberty Mut. Ins. Co., 152 F.3d 162, 168 (2d Cir. 1998) (quoting Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525 (2d Cir. 1994)). "In pleading these elements, a plaintiff must identify what provisions of the contract were breached as a result of the acts at issue." Wolff v. Rare Medium, Inc., 171 F. Supp.2d 354, 358 (S.D.N.Y. 2001) (citing Levy v. Bessemer Tr. Co., No. 97 CIV. 1785(JFK), 1997 WL 431079, at *5 (S.D.N.Y. July 30, 1997) (citing Pits Ltd. v. American Express Bank, Int'l, 911 F. Supp. 710, 719 (S.D.N.Y. 1996)). Even assuming arguendo that Plaintiff satisfies the first three elements, he does

not plausibly allege how any damages result from either of his two proposed theories of breach of contract.

The first theory of alleged breach is that the defendants "made unapproved, secret loans of at least $3 million to other entities at the sole discretion of Daniel." Dkt #13 at 49, ¶ 322. However, Plaintiff does not offer anything more than conclusory assertions regarding how any damages "result[ed] from" the unauthorized loans. Id. at 50, ¶ 323. Furthermore, Plaintiff fails to identify which provisions of the contract were breached as a result of the unlawful actions, which is fatal to his ability to state a claim. See CreditSights, Inc. v. Ciasullo, No. 05 CV 9345(DAB), 2008 WL 4185737, at *11 (S.D.N.Y. Sept. 5, 2008) ("New York law is eminently clear that a proper breach of contract claim must identify specifically breached contract terms. None are so alleged in the counterclaims."). Both of these deficiencies warrant a finding that Plaintiff has failed to state a viable breach of contract claim on the first theory.

The second theory of alleged breach is that, under "Article VII, paragraphs (H) and (I) of the Partnership Agreement required that the purchase price of the units be based on a third-party valuation conducted within a year prior to closing," but "[n]o third-party valuation . . . took place." Dkt #13 at 50, ¶¶ 325-26. According to Plaintiff, absent the "contractually-required third-party valuation, it is impossible to determine how much [he]

sustained in damages." Id. ¶ 329. Although Plaintiff does identify the contractual provisions at issue (Article VII, paragraphs (H) and (I)), he nevertheless fails to state a claim because he does not allege the element of performance of his own obligations.

As noted above, Article VII, paragraphs (H) and (I), of the Multistate partnership contract, are the basis of Plaintiff's valuation claim. In order to trigger the third-party valuation, these paragraphs demand service of "the required Notice described in Paragraph B [of Article VII]." Exhibit ("Ex.") A10 at 26, ¶ H to Declaration of Lawrence Vilardo, Esq. (Dkt #21-1). "Paragraph B," in turn, provides that if a partner shall "desire to sell" his or her interest, then the partner "shall immediately give written notice" to the other partners and to Multistate. Id. at 18, ¶ B(1). However, a letter dated January 31, 2013 (Dkt #13-8), attached to the Amended Complaint,[2] demonstrates that Plaintiff never provided the required written notice. See Dkt #13-8 at 3 ("Importantly, [Plaintiff] never provided any formal written notice of withdrawal required by the governing agreements and thus himself breached same."). Although Count 10 includes the allegation "Plaintiff performed his obligations under the Partnership Agreements," Dkt #13 at 49, ¶ 318, this is too conclusory an allegation to

---

2

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

suffice for purposes of Rule 12(b)(6). See Hirsch v. Arthur
Andersen & Co., 72 F.3d 1085, 1092 (2d Cir. 1995) ("General,
conclusory allegations need not be credited, however, when they are
belied by more specific allegations of the complaint.") (citation
omitted). Because the Amended Complaint does not include any non-
conclusory allegation that Plaintiff provided the required written
notice, Count Ten fails to state a claim based on Plaintiff's
second theory of breach.

### C. Counts Eleven, Twelve, and Thirteen Must Be Dismissed, Contrary to the R&R

Counts Eleven, Twelve, and Thirteen assert causes of action
for breach of contract against Buffalo Emergency Associates, WNY
Immediate Care, and Exigence Hornell, respectively. See Dkt #13 at
51-54, ¶¶ 331-55. The R&R acknowledged the defendants' argument for
dismissal of Counts Eleven, Twelve, and Thirteen, based on the
settled principle that a partnership is not a party to the
agreement creating the partnership; only the individual partners
are. Therefore, the partnership entity cannot be in breach of the
agreement that formed it. See, e.g., Cordts-Auth v. Crunk, LLC, 815
F. Supp.2d 778, 798 (S.D.N.Y. 2011) ("Under New York law, limited
liability company (LLC) was not party to LLC's operating agreement,
but instead was formed by agreement, and thus could not have
breached it.") (citing Purchase Partners II, LLC v. Max Capital
Mgmt. Corp., 19 Misc.3d 1123(A), 862 N.Y.S.2d 817 (Table), 2008 WL

1821878, at *2 (Sup. Ct. 2008)), aff'd, 479 F. App'x 375 (2d Cir. 2012).

Instead, the R&R found that this principle did not apply because Plaintiff "successfully pled that the entities he partly owned were alter egos of the individual defendants." Dkt #41 at 48. This appears to be the sole basis for the recommendation to sustain Counts Eleven, Twelve, and Thirteen. However, as the Harris Beach Defendants argue, Plaintiff does not allege that the entities named as defendants in Counts Eleven, Twelve, and Thirteen were alter egos of the individual defendants; nor does he assert Counts Eleven, Twelve, and Thirteen against any individual members or partners of the respective entities. See Dkt #46-1 at 8 & n. 7 (citing Dkt #13 at 51-54, ¶¶ 331-55). Again, the R&R seems to have supplemented the Amended Complaint with a theory of liability not advanced by Plaintiff.

In any event, even assuming arguendo that Plaintiff had sued the individual defendants for their breaches of the respective partnership agreements cited in Counts Eleven, Twelve, and Thirteen, he cannot invoke a veil-piercing theory as a basis to attach liability to the entities through the individual partners because they are "natural person[s] with no corporate veil to pierce." Purchase Partners II, LLC, 2008 WL 1821878, at *3 (plaintiff sued defendant, a limited liability company formed by two individuals, Adam and Lerner; court noted that while plaintiff

did not sue Adam for breach of contract, "if he had done so, he could not attach liability to Max Capital through Adam on a veil-piercing theory, as Adam is a natural person with no corporate veil to pierce"). Because Buffalo Emergency Associates, WNY Immediate Care, and Exigence Hornell, the defendants named in Counts Eleven, Twelve and Thirteen, are not parties to their operating or partnership agreements, those Counts fail to state a claim as against them and must be dismissed.

**D.  Count Fifteen Should Be Dismissed, Contrary to the R&R**

In Count Fifteen of the Amended Complaint, Plaintiff demands an accounting from all defendants. See Dkt #13 at 55-56, ¶¶ 362-67. The R&R recommended sustaining Count Fifteen, noting that the defendants "made only the nominal opposition" that Plaintiff "is not entitled to this Court's aid in obtaining an accounting for the simple reason that the defendants are and always have been willing to provide [him] with access to information under their control regarding his former interests in the Exigence Group." Dkt #41 at 49 (quoting Dkt #21-2 at 42; quotation marks omitted). The Connors Defendants argue in their objections, their opposition is not "nominal" because it goes to an essential element of a cause of action for an accounting—a demand for an accounting and a refusal. See Dkt #48 at 13-14.

"Under New York law, to state a claim for accounting, a plaintiff must establish four conditions: '(1) relations of a

mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him a burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal.'" IMG Fragrance Brands, LLC v. Houbigant, Inc., 679 F. Supp. 2d 395, 411 (S.D.N.Y. 2009) (quoting Pressman v. Estate of Steinvorth, 860 F. Supp. 171, 179 (S.D.N.Y. 1994) (quoting 300 Broadway Realty Corp. v. Kommit, 37 Misc.2d 325, 235 N.Y.S.2d 205, 206 (Sup. Ct. 1962)). Plaintiff alleges that his "requests to officers and managing members of the entities . . . for an accounting and valuation of his interests went unanswered at the time of his withdrawal." Dkt #13 at 55, ¶ 363. The Connors Defendants note that they provided responses to such requests citing their letter dated January 31, 2013 (Dkt #13-8), in which they answered Plaintiff's letter requesting "explanations as to how his ownership interests in holding companies with more than 20 entities affiliated with them would be or were valued upon his departure." Dkt #13-1 at 1. In their January 31, 2013 letter, Defendants explained how Plaintiff's interests in the various entities were calculated, see Dkt #13-8 at 6-9, and attached, as exhibits, tables and calculations regarding Plaintiff's payments, id. at 10-17.

Defendants argue that their January 2013 letter and exhibits directly contradict Plaintiff's allegation, Dkt #13 at 55, ¶ 362, that they have refused to provide him with the contractually

required valuations of his partnership interests. The Connors Defendants urge the Court not to accept this allegation as true, because the documents control over his allegations. Dkt #48 at 15 (citations omitted). Defendants also assert that Plaintiff has failed to allege why the January 2103 letter was unsatisfactory or what further information he requires.

Plaintiff counters that in his opposition to the Connors Defendants' Motion to Dismiss, he did explain why the January 2013 letter was insufficient—that he does not understand the "four (4) tables that appear to be some kind of summary of numbers for Western New York Immediate Care Buy Out." Dkt #26 at 28. Significantly, however, such an allegation does not appear in the Amended Complaint. And, "it is axiomatic" that a complaint "cannot be amended by the briefs in opposition to a motion to dismiss." O'Brien v. Nat'l Prop. Analysts Partners, 719 F. Supp. 222, 229 (S.D.N.Y. 1989) (citing Jacobson v. Peat, Marwick, Mitchell & Co., 445 F. Supp. 518, 526 (S.D.N.Y. 1977); Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984) (although the district court had "relied on the plaintiffs' briefs to embellish the conclusory allegations of the complaint," it must limit its review "to the well-pleaded allegations of the complaint"), cert. denied, 470 U.S. 1054 (1985)); see also In re Cocoa Servs., L.L.C., No. 17-11936-JLG, 2018 WL 1801240, at *11 (Bankr. S.D.N.Y. Apr. 13, 2018) (holding that "none of the facts and legal theories that the

[t]rustee introduced in his [o]pposition can cure the deficiencies in the [c]omplaint") (collecting cases). Moreover, as the Connors Defendants pointed out, if Plaintiff did not understand those tables, he should have requested a clarification and not started a Federal lawsuit. <u>See</u> Dkt #33 at 20.

In sum, the Court finds that Plaintiff has not plausibly pleaded "a *failure or refusal* by the partner with the books, records, profits or other assets of the partnership in his possession to account to the other partner or partners[," <u>Adam v. Cutner & Rathkopf</u>, 238 A.D.2d 234, 241, 656 N.Y.S.2d 753, 758 (1st Dep't 1997) (quotation marks omitted; emphasis supplied). Therefore, the Court finds that dismissal of Count Fifteen is warranted.

## V. Conclusion

For the foregoing reasons, the Court accepts in part and rejects in part the R&R (Dkt #41). The Court grants the Motions to Dismiss (Dkt ##7, 8, 20 & 21) in their entirety. The Court accordingly dismisses the Amended Complaint (Dkt #13) with prejudice. The Clerk of Court is directed to close this case.

**SO ORDERED.**

**S/Michael A. Telesca**
_____
          HON. MICHAEL A. TELESCA
          United States District Judge

Dated:    February 25, 2019
          Rochester, New York.

-24-